1  **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                       **FOR THE DISTRICT OF ARIZONA**

8

9  The ACT Group, Inc.,                )   No. CV-12-567-PHX-SMM
                                        )
10          Plaintiff,                  )
                                        )
11 vs.                                  )   **ORDER**
                                        )
12 James Hamlin, et al.,                )
                                        )
13          Defendants.                 )
                                        )
14 _____ )
                                        )
15 And Related Counterclaim.            )
   _____ )

16

17       Pending before the Court is Defendant James Hamlin's ("Hamlin") motion for

18 summary judgment. (Doc. 89.) The motion is fully briefed. (Docs. 90, 99-102.) Also

19 pending is Plaintiff The Act Group Inc.'s ("ACT") motion to modify the case management

20 order and for leave to file a second amended complaint. (Doc. 97.) This motion is also fully

21 briefed. (Docs. 103, 105.) After review and consideration,[1] the Court will deny Hamlin's

22 motion for summary judgment and deny ACT's motion to modify the case management order

23 and for leave to file a second amended complaint.

24 ///

25

26       _____
         [1]Hamlin's request for oral argument is denied because the parties have had an
27 adequate opportunity to present their written arguments, and oral argument will not aid the
   Court's decision. See Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev., 933 F.2d
28 724, 729 (9th Cir. 1991).

**BACKGROUND**

ACT provides training and education services to Heating, Ventilation and Air Conditioning ("HVAC") distributors, dealers and their representatives nationwide. (Doc. 47.) In the course of its business, ACT developed copyrighted sales training materials, which it labeled "*The Works*," containing both sales training materials and written hand-outs. (Docs. 100-4 at 1-6, 90-1, 90-2.) *The Works* comprises the titles "No Pressure Selling" and "Trane Boot Camp: A Comprehensive Study Guide to In-Home Sales." (Id.) Defendant James Hamlin, a one-time provider of sales training for ACT, left ACT to go to work for Defendant WaterFurnace ("WaterFurnace") as a national sales trainer. (Doc. 47.)  WaterFurnace is a geothermal manufacturer and distributor of HVAC systems, which also provides sales training to HVAC dealers and representatives.  (Id.)

Mr. Hamlin had access to *The Works* while working as a sales trainer for ACT.  (Id.) ACT alleges that Mr. Hamlin utilized ACT Group's proprietary sales training concepts and materials to perform sales training services for WaterFurnace.  (Id.)  Further, ACT alleges that Mr. Hamlin copied ACT's copyrighted materials and now uses materials that are, as a whole substantially similar to *The Works*, and that some of the materials used by Mr. Hamlin are identical to some of *The Works*. (Id.)  Hamlin's sales training presentation is entitled to "*Smarter Sales Training*."  (Doc. 90-3.)  ACT's first amended complaint alleges copyright infringement, breach of duty of loyalty, aiding and abetting breach of duty of loyalty, and unfair competition.  (Doc. 47.)

**STANDARD OF REVIEW**

I.  Summary Judgment

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994).  Substantive law determines which facts are material.  See Anderson v. Liberty Lobby, 477 U.S. 242, 248

1   (1986); see also Jesinger, 24 F.3d at 1130. "Only disputes over facts that might affect the

2   outcome of the suit under the governing law will properly preclude the entry of summary

3   judgment." Anderson, 477 U.S. at 248. The dispute must also be genuine, that is, the

4   evidence must be "such that a reasonable jury could return a verdict for the nonmoving

5   party." Id.; see Jesinger, 24 F.3d at 1130.

6        A principal purpose of summary judgment is "to isolate and dispose of factually

7   unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate

8   against a party who "fails to make a showing sufficient to establish the existence of an

9   element essential to that party's case, and on which that party will bear the burden of proof

10  at trial." Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir.

11  1994). The moving party need not disprove matters on which the opponent has the burden

12  of proof at trial. See Celotex, 477 U.S. at 323. The party opposing summary judgment may

13  not rest upon the mere allegations or denials of the party's pleadings, but must set forth

14  specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e);

15  Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 585-88 (1986); Brinson v. Linda

16  Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).

17       II.    Motion to Amend

18       After the district court has filed a pretrial case management order pursuant to Federal

19  Rule of Civil Procedure 16 that establishes a timetable for amending pleadings, Rule 16

20  standards control any modification. See Johnson v. Mammoth Recreations, Inc., 975 F.2d

21  604, 607-08 (9th Cir. 1992). The case management schedule shall not be modified except

22  by leave of court upon a showing of good cause. Fed. R. Civ. P. 16(b)(4). The good cause

23  standard primarily considers the diligence of the party seeking the amendment. See Johnson,

24  975 F.2d at 609. The district court may modify the pretrial schedule if amendment cannot

25  reasonably be sought despite the diligence of the party seeking the modification. Id.

26       If the party is able to establish good cause for amendment, the party must also

27  demonstrate that amendment is proper under Rule 15. See id. at 608. Under Rule 15,

28  although leave to amend "shall be freely given when justice so requires," it "is not to be

1    granted automatically." <u>Zivkovic v. Southern California Edison Co.</u>, 302 F.3d 1080, 1087

2    (9th Cir. 2002) (citing <u>Jackson v. Bank of Hawaii</u>, 902 F.2d 1385, 1387 (9th Cir. 1990). The

3    district court may deny a motion for leave to amend if permitting an amendment would,

4    among other things, cause an undue delay in the litigation or prejudice the opposing party.

5    <u>See</u> <u>Jackson</u>, 902 F.2d at 1387; <u>see also</u> <u>Solomon v. North Am. Life & Cas. Ins. Co.</u>, 151

6    F.3d 1132, 1139 (9th Cir. 1998) (affirming the district court's denial of motion to amend

7    pleadings filed on the eve of the discovery deadline).  The Court's discretion to deny leave

8    to amend is particularly broad where Plaintiff has previously been permitted to amend their

9    complaint.  <u>Sisseton–Wahpeton Sioux Tribe v. United States</u>, 90 F.3d 351, 355 (9th Cir.

10   1996).  Repeated failure to cure deficiencies is one of the factors to be considered in deciding

11   whether justice requires granting leave to amend.  <u>See</u> <u>Moore v. Kayport Package Express,</u>

12   <u>Inc.</u>, 885 F.2d 531, 538 (9th Cir. 1989).

13                                            **DISCUSSION**

14                   <u>I. Hamlin's Motion for Summary Judgment</u>

15          Hamlin moves for summary judgment against ACT's copyright infringement claim.

16   (Doc. 89.)  Hamlin alleges that ACT's *The Works* only uses common ideas, techniques, and

17   phrases of the sales industry and that there is nothing unique or original about *The Works* that

18   would entitle it to copyright protection.  (<u>Id.</u> at 5-6.)  Hamlin further alleges that even if *The*

19   *Works* is entitled to copyright protection, substantially all of the portions of *The Works*

20   claimed to have been copied by Hamlin are common phrases in the public domain, and not

21   subject to copyright protection by ACT.  (<u>Id.</u>)  Therefore, there has been no copyright

22   infringement.

23          ACT contends that *The Works* are "original" because they were independently created

24   by ACT and reflect more than the minimal degree of creativity required for copyright

25   protection.  (Doc. 99 at 5.)  ACT contends that Hamlin's motion be denied as to originality

26   because it ignores the applicable elements in copyright infringement of literary works, and

27   instead focuses on the inapplicable principle that copyright protection does not extend to

28   ideas, methods, processes and the like. (Doc. 99 at 2.)  ACT further contends that Hamlin's

1    motion be denied as to infringement because there are disputed issues of material fact, such

2    as the substantial similarity between *The Works* and Hamlin's *Smarter Sales Training*. (Id.)

3    In its first amended complaint, ACT claims copyright infringement against

4    Defendants. (Doc. 47.) In order to prove copyright infringement, ACT must prevail on both

5    prongs: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the

6    work that are original." Feist Publ'n, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361

7    (1991). In Hamlin's motion for summary judgment, he attacks both prongs alleging that

8    ACT cannot prevail on either prong. (Doc. 89.)

9    *Originality*

10   Hamlin first argues that ACT, as a matter of law, cannot establish that *The Works* is

11   properly entitled to copyright protection because there is nothing unique or original about

12   *The Works*. (Doc. 89 at 6.) Hamlin argues that "[c]opyright protection does not extend to

13   ideas, procedures, processes, methods of operation, concept, principle or discovery,

14   regardless of the form in which it is described, explained, illustrated, or embodied in such

15   work." (Id. at 4, (quoting from 17 U.S.C. § 102(b)).) Therefore, it is argued that copyright

16   protection does not extend to any process or method of providing sales training. (Id. at 5.)

17   Next, Hamlin argues that *The Works* is not entitled to copyright protection because it only

18   uses common ideas, techniques and common phrases taken from the sales industry. (Id. at

19   6.)

20   To be entitled to copyright protection, a work must be original to the creator. See

21   Feist, 499 U.S. at 345 (1991). "Original," in copyright terms means "only that the work was

22   independently created by the author (as opposed to copied from other works), and that it

23   possesses at least some minimal degree of creativity." Id. (further citation omitted). The

24   requisite level of creativity is "extremely low; even a slight amount will suffice. The vast

25   majority of works make the grade quite easily, as they possess some creative spark, no matter

26   how crude, humble or obvious it might be." Id. (internal citations omitted). The Feist Court

27   further stated that while facts and ideas are not copyrightable, factual compilations can be

28   protected by copyright. Id. at 348. It is the author's organization and expression of the facts,

1  methods, or ideas contained in the work that enjoys copyright protection.  Id.; see also B2B
2  CFO Partners, LLC v. Kaufman, 787 F. Supp.2d 1002, 1007 (D. Ariz. 2011); Folio
3  Impressions, Inc. v. Byer California, 752 F. Supp. 583, 590 (S.D.N.Y. 1990) (stating that a
4  valid copyright protects not the idea itself, but rather the particular expression of that idea).
5        It is undisputed that ACT registered The Works with the United States Copyright
6  Office.  ACT's certificate of copyright registration entitles them to a "rebuttable presumption
7  of originality" for The Works.  See BSB, 787 F. Supp.2d at 1006.  Consequently, Hamlin
8  must show why The Works is not copyrightable.  Hamlin contends that The Works is but a
9  teaching method which is not copyrightable and it only uses common phrases that are
10  generally employed in the sales industry.  (Doc. 89 at 5-7.)
11        The Court finds that The Works is entitled to copyright protection.  The Works is
12  comprised of two different sales training manuals, entitled "No Pressure Selling" and "Trane
13  Boot Camp, A Comprehensive Study Guide to In-Home Sales." (See Doc. 90-1 at 2-105, 90-
14  2 at 2-101.)  As the Feist Court evaluated, surmised, and stated, the vast majority of works
15  pass the "originality" grade quite easily, because they possess some creative spark that is
16  original with the creator.  In this case, The Works is a particular original expression of ACT
17  regarding how to train sales representatives.  (See id.)  It is the author's organization and
18  expression of the facts, ideas, and common phrases regarding how to train sales
19  representatives that entitles The Works to copyright protection.  Hamlin has not demonstrated
20  the invalidity of its copyright and Hamlin is not entitled to summary judgment on the ground
21  that The Works lacks the requisite originality.
22        *Infringement*
23        Next, Hamlin argues that he is entitled to summary judgment because ACT cannot
24  demonstrate that he copied elements of The Works that are original.  (Docs. 89, 101.)  In
25  order to demonstrate infringement, ACT highlighted portions of Hamlin's Smarter Sales
26  Training materials and portions of ACT's The Works for comparison in order to argue that
27  Hamlin copied specific expressive elements of the materials. (Doc. 100-2.) Hamlin contends
28  that the highlighted portions are not original expressions by ACT but merely common

expressions within the sales industry that are in the public domain. (Doc. 101 at 2.) Hamlin further argues that while ACT's and his materials both deal with sales training, the expressions he utilized, the appearance of the materials, the products that are the subject of the materials (geothermal vs. standard HVAC equipment), and the techniques necessary to sell the equipment to which the materials are directed are not the same, and therefore the materials are not substantially similar. (Id.)

The owner of a copyright has the exclusive right to "copy" the copyrighted work; that is, to make a copy of the work, to prepare derivative works based on the work, or to distribute copies of the work to the public. See 17 U.S.C. § 106(1)-(3); S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1085 n.3 (9th Cir. 1989) (stating that "copying" is shorthand for the copyright owner's exclusive rights). Copyright plaintiffs must therefore satisfy two requirements to establish direct infringement: (1) they must show that they own the allegedly infringed copyright, and (2) they must show that the alleged infringer has violated at least one of the exclusive rights granted to copyright holders. See A & M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1013 (9th Cir. 2001).

In order to show infringement, ACT must demonstrate that Hamlin had access to *The Works* and that *The Works* and *Smarter Sales Training* are "substantially similar in idea and in expression of the idea." (Doc. 99 at 7, (quoting B2B, 787 F. Supp.2d at 1007).)

The Ninth Circuit has adopted a two-part test to determine whether two works are substantially similar. See Smith v. Jackson, 84 F.3d 1213, 1218 (9th Cir. 1996.) The "extrinsic test" is an "objective comparison of specific expressive elements"; it focuses on the "articulable similarities" between the two works. L.A. Printex Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 848 (9th Cir. 2012). The "intrinsic test" is a subjective comparison that focuses on "'whether the ordinary, reasonable audience' would find the works substantially similar in the 'total concept and feel of the works.'" Id. As further explained in B2B:

> Courts use a two-part test to determine whether two works are substantially similar. The extrinsic test addresses whether two works share a similarity of ideas and expression based on external, objective criteria. If the plaintiff

satisfies the extrinsic test, then the subjective, intrinsic test examines whether a reasonable, ordinary observer would find a substantial similarity of expression of the shared idea. For summary judgment, only the extrinsic test is relevant. If plaintiff satisfies the extrinsic test, the intrinsic test's subjective inquiry must be left to the jury and summary judgment must be denied.

B2B, 787 F. Supp.2d at 1007.

When applying the extrinsic test, the Court will require a lower standard of proof on similarity if Hamlin had a high degree of access to the subject work. See Smith, 84 F.3d at 1218 (stating that "a lesser showing of substantial similarity [is required] if there is a strong showing of access."); see also B2B, 787 F. Supp.2d at 1007. Additionally, when applying the extrinsic test, the Court, given that Hamlin moved for summary judgment, will view the evidence and supporting documents in the light most favorable to ACT, the nonmoving party.

Here, there is no dispute but that Hamlin had a high degree of access to copies of *The Works*. Hamlin worked as a Sales Trainer for ACT for nine years. This leaves the question of whether *The Works* and copied materials are substantially similar under the lesser degree of similarity required due to Hamlin's high degree of access.

Hamlin argues that the extrinsic test is not satisfied because substantially all of the portions of *The Works* claimed to have been copied by Hamlin are common phrases in the public domain, and thus not subject to grounds for copyright infringement. (Doc. 89 at 6.) Hamlin contends that substantial similarity cannot be found if only small, common phrases appear in both the allegedly infringing work and the complaining work. (Id.)

The Court has reviewed ACT's exhibit, which shows the alleged similarities in a side-by-side manner. (See Doc. 100-2.) The Court has considered this evidence under the appropriate extrinsic test standard and finds that ACT has demonstrated substantial similarity in the wording and effect between *The Works* and *Smarter Sales Training*. (Id.) In this review, there are multiple occasions of Hamlin using the same common phrases as in *The Works*, not minimally as argued by Hamlin. (Id.) Furthermore, there are other times where copying is evident. (Id.) Thus, viewing the evidence in the light most favorable to ACT, the extrinsic test for infringement has been satisfied by ACT.

Under the Ninth Circuit standard, the remaining intrinsic test is a fact question that

will be left for the jury–whether a reasonable, ordinary observer would find a substantial similarity of expression of the shared idea.  Consequently, Hamlin has not prevailed on the infringement prong.

In summary, the Court will deny Hamlin's motion for summary judgment.  Hamlin has failed to establish the *The Works* is not copyrightable due to lack of originality and Hamlin has failed to establish that he did not infringe on ACT's copyrighted manual, *The Works*.

II.  ACT's Motion to Amend

ACT moves the Court to modify the case management deadline to amend pleadings and grant leave to file a second amended complaint allowing it to add two indirect copyright infringement claims, a claim for "vicarious infringement" and a claim for "contributory infringement."  (Doc. 97.)  ACT states that it did not have a basis for alleging these additional indirect legal theories until it obtained discovery from WaterFurnace in April and June 2013 to the effect that it was only Hamlin who was involved in copying *The Works*, not any employee or agent of WaterFurnace.  (Id. at 11-15.)

WaterFurnace contends that amendment be denied because ACT was not diligent in pursuing amendment of its first amended complaint.  (Doc. 103.)  WaterFurnace contends that it informed ACT before litigation began that it was not involved in any copying of *The Works* and that Hamlin was not an employee of WaterFurnace.  (Id. at 2.)

*Indirect Copyright Infringement*

Vicarious liability for copyright infringement arises where "the right and ability to supervise" the conduct of the infringer coalesces with "an obvious and direct financial interest in the exploitation of copyrighted materials."  Shapiro, Bernstein & Co. v. H.L. Green Co., 316 F.2d 304, 307 (2nd Cir. 1963); see Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 262 (9th Cir. 1996) (following Shapiro as the landmark case on vicarious copyright liability).  This is so whether or not the superior has actual knowledge of the infringement. Shapiro, 316 F.2d at 307.

A defendant is a contributory infringer if it (1) has knowledge of a third party's

1    infringing activity, and (2) induces, causes, or materially contributes to the infringing
2    conduct.  See Ellison v. Robertson, 357 F.3d 1072, 1076 (9th Cir. 2004).  A defendant is not
3    a contributory infringer in the absence of direct infringement by a third party.  See A&M
4    Records, 239 F.3d at 1013 n.2.

5        *Discussion*

6        The Court finds that ACT was not diligent in seeking to amend its first amended
7    complaint to add these indirect theories of liability against WaterFurnace.  The parties
8    correctly cite the standards for modifying a case management deadline.  After the district
9    court has filed a pretrial case management order, Rule 16 standards control any modification
10   for amending pleadings.  See Johnson, 975 F.2d at 607-08.  The case management schedule
11   shall not be modified except by leave of court upon a showing of good cause.  Rule 16(b)(4).
12   The good cause standard primarily considers the diligence of the party seeking the
13   amendment.  See Johnson, 975 F.2d at 609.  Here, ACT seeks amendment despite evidence
14   showing that WaterFurnace disclaimed prior to the commencement of litigation any
15   participation in direct infringement and that Hamlin was not an employee of WaterFurnace.
16   (See Docs. 103-1-105-1.)  In addition, in answers to interrogatories dated December 4, 2012,
17   WaterFurnace indicated to ACT that it did not have a copy of *The Works*, know the content
18   of *The Works*, and that Hamlin was an independent contractor for WaterFurnace.  (Doc. 103
19   at 5, Doc. 105-1 at 2-10.)  Thus, given WaterFurnace's pre-litigation factual allegations, ACT
20   knew that it needed to consider indirect claims of copyright infringement as part of its
21   complaint.  ACT chose not to include these indirect claims in its complaint or in its first
22   amended complaint.  Moreover, ACT did not seek leave to amend after receipt of
23   WaterFurnace's answers to interrogatories.  On this basis, ACT was not diligent and has not
24   established good cause for modifying the case management deadline for amending pleadings,
25   which was November 16, 2012.  (See Doc. 33.)

26       ACT states that it in April and June 2013, it obtained through discovery sworn
27   testimony that WaterFurnace did not perform any copying of *The Works*, that it was Hamlin,
28   and that Hamlin's acts were those of a nonagent independent contractor.  (Doc. 97 at 10.)

1    ACT argues that due to the sworn testimony it now has sufficient evidence to request leave
2    to amend to add its indirect infringement claims, which it filed in August 2013.  (Id.)
3    Moreover, ACT also advises that recent discovery from WaterFurnace establishes that
4    individuals at WaterFurnace, other than Hamlin, were involved in directly copying *The*
5    *Works*.  (Doc. 105 at 3.

6           The Court rejects ACT's propositions regarding the type of evidence it believed was
7    necessary before it could properly allege indirect infringement claims in its complaint.
8    Under Rule 8(a)(2), the Rules require a short and plain statement of the claim.  Based upon
9    Rule 8(a)(2)'s pleading standard, the Rules then generally rely on discovery and summary
10   judgment to flesh out the disputed facts.  See Swierkiewicz v. Sorema N.A., 534 U.S. 506,
11   512 (2002) (stating that before discovery has unearthed the relevant facts and evidence, it is
12   difficult to define the precise formulation of the required *prima facie* case in each particular
13   case); cf. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (stating that to survive a
14   Rule 12(b)(6) motion to dismiss, a complaint must contain more than "labels and
15   conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain
16   factual allegations sufficient to "raise a right to relief above the speculative level.").

17          Based on this record, the Court finds that ACT had enough information available to
18   it to include indirect infringement claims in its complaint and lacked diligence in failing to
19   so include them.  The Court further finds that it was not incumbent upon ACT to wait until
20   it had sworn testimony before concluding that it had enough evidence to proceed with its
21   indirect infringement claims.  The Twombly plausibility standard is not erected against
22   claims that suffer from a factual basis not grounded in deposition testimony or sworn answers
23   to interrogatories.  The Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009),
24   stressed that Twombly's plausibility standard "is not akin to a 'probability requirement,' but
25   it asks for more than a sheer possibility that a defendant has acted unlawfully."  Furthermore,
26   ACT's lack of diligence is shown by not pursuing a leave to amend after receipt of answers
27   to interrogatories from WaterFurnace further established a factual basis for ACT to claim
28   indirect copyright infringement.

1    Consequently, the Court finds that ACT was not diligent and has not established good

2 cause for amendment.  Therefore, the Court will not modify its case management order to

3 allow ACT to file a second amended complaint to add the indirect infringement claims.

4    Accordingly, on the basis of the foregoing,

5    **IT IS HEREBY ORDERED** denying Hamlin's motion for summary judgment.

6 (Doc. 89.)

7    **IT IS FURTHER ORDERED** denying ACT's motion to modify the case

8 management order and motion for leave to file second amended complaint.  (Doc. 97.)

9    DATED this 28th day of March, 2014.

10

11

12                              Stephen M. McNamee
                               Senior United States District Judge
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28