**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| The ACT Group, Inc., | ) | No. CV-12-567-PHX-SMM |
| Plaintiff, | ) | |
| vs. | ) | **ORDER** |
| James Hamlin, et al., | ) | |
| Defendants. | ) | |
| | ) | |
| James Hamlin, et al., | ) | |
| Counter-Claimant, | ) | |
| vs. | ) | |
| The ACT Group, Inc., | ) | |
| Counter-Defendant. | ) | |

Pending before the Court is Counter-Defendant The ACT Group, Inc.'s ("ACT") motion for summary judgment against Counter-Claimant James Hamlin ("Hamlin" or "Mr. Hamlin"), which is fully briefed. (Docs. 107-08, 111-12, 114.) Also pending is Defendant WaterFurnace International Inc.'s ("WaterFurnace") motion for summary judgment, which is fully briefed. (Docs. 115-16, 118-19, 124-25.) After reviewing and considering the briefs, the Court will deny WaterFurnace's motion for summary judgment and grant ACT's motion

for summary judgment.[1]

## I. WATERFURNACE'S MOTION FOR SUMMARY JUDGMENT

### Background and Procedural History

The following facts are undisputed unless otherwise noted. ACT provides training and education services to Heating, Ventilation and Air Conditioning ("HVAC") distributors, dealers and their representatives nationwide. (Doc. 47.) In the course of its business, ACT developed copyrighted sales training materials, which it labeled "*The Works*," containing both sales training materials and written hand-outs. (Docs. 100-4 at 1-6, 90-1, 90-2.) *The Works* consists of the titles "*No Pressure Selling*" and "*Trane Boot Camp: A Comprehensive Study Guide to In-Home Sales.*" (Id.)

ACT owns a federal copyright issued by the United States Copyright Office, Certificate of Registration No. TX 000479930 dated June 9, 1998, for the materials entitled "*No Pressure Selling.*" (Doc. 100-4.) ACT owns a federal copyright, Certificate of Registration No. TX 7-489-546 dated February 29, 2012, also for "*No Pressure Selling.*" (Id.) ACT owns a federal copyright, Certificate of Registration No. TX 7-489-595 dated February 29, 2012, for the materials entitled "*Trane Boot Camp: A Comprehensive Study Guide to In-Home Sales.*" (Doc. 116-4.) *The Works* is comprised of three valid copyright registrations owned by ACT, Certificate of Registration numbers TX 7-489-546, TX 7-489-595, and TX 4-799-830. (Doc. 100-4.)

In 2002, ACT entered into an non-exclusive independent contract with Mr. Hamlin for Hamlin to serve as one of its national sales trainers. (Doc. 108-1 at 2-3.) In December 2010, WaterFurnace independently contracted with Mr. Hamlin, also as a sales trainer. (Doc. 115 at 4.) WaterFurnace is a geothermal manufacturer and distributor of HVAC systems that provides its own sales training to HVAC dealers and representatives. (Id.) Subsequently,

---

[1] ACT's request for oral argument on both motions is denied because the parties have had an adequate opportunity to present their written arguments, and oral argument will not aid the Court's decision. See Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev., 933 F.2d 724, 729 (9th Cir. 1991).

in May 2011, Mr. Hamlin left ACT informing them that he had decided to work exclusively for WaterFurnace. (Doc. 108-1 at 3.)

It is undisputed that Mr. Hamlin had access to *The Works* while he worked as a sales trainer for ACT. (Doc. 108-1.) According to ACT, Mr. Hamlin utilized ACT Group's proprietary sales training concepts and materials when he left ACT to perform similar sales training services for WaterFurnace, making a sales training presentation for WaterFurnace entitled "*Smarter Sales Training*." (Doc. 90-3.) In ACT's FAC (Doc. 47), it alleged that Mr. Hamlin copied ACT's copyrighted materials and now uses materials that are, as a whole substantially similar to *The Works*, and that some of the materials used by Mr. Hamlin are identical to *The Works*. (Compare Doc. 90-1 and 90-2 with 90-3.) ACT further alleged that WaterFurnace directly infringed its copyright of *The Works* for its own advantage. (Doc. 47 at 7-9.)

Following discovery, Mr. Hamlin moved for summary judgment on ACT's direct copyright infringement claim. (Doc. 89.) Mr. Hamlin first argued that *The Works* is not entitled to copyright protection because it only used common ideas, techniques, and phrases of the sales industry and that there was nothing unique or original about *The Works* that would entitle it to copyright protection. (Id. at 5-6.) Next, Mr. Hamlin claimed that even if *The Works* was entitled to copyright protection, he did not infringe on the copyright because substantially all of the portions of *The Works* that ACT claimed he copied are just common phrases in the public domain, and not subject to copyright protection. (Id.)

The Court disagreed, denying Mr. Hamlin's motion for summary judgment. (Doc. 126.) The Court first found that *The Works* was entitled to copyright protection. (Id.) As to Mr. Hamlin's contention that ACT could not establish direct infringement, the Court applied the Ninth Circuit's two-part substantially similar test from Smith v. Jackson, 84 F.3d 1213, 1218 (9th Cir. 1996). (Id.) The Court made an "objective comparison of specific expressive elements" focusing on the "articulable similarities" between the two works. (Id.) The Court found that Mr. Hamlin had access to *The Works* and that *The Works* and *Smarter Sales Training* were "substantially similar in idea and in expression of the idea." (Id.) The Court

1  found that ACT established the "extrinsic test." (Id.) Regarding application of the second
2  prong, the "intrinsic test," the Court found that such a determination was for the jury, and
3  denied Mr. Hamlin's motion for summary judgment on direct infringement. (Id.); see Shaw
4  v. Lindheim, 919 F.2d 1353, 1358 (9th Cir. 1990).

5  In the same order, the Court denied ACT's motion for leave to file a second amended
6  complaint alleging two indirect copyright infringement claims, a claim for "vicarious
7  infringement" and a claim for "contributory infringement." (Id.) WaterFurnace now moves
8  for summary judgment contending that ACT lacks evidence that it directly infringed *The*
9  *Works* copyright; ACT moves for summary judgment on Mr. Hamlin's counterclaim for
10 invasion of privacy.

**Standard of Review**

*Summary Judgment*

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, show "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also Jesinger, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Id.; see Jesinger, 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir.

1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. See Celotex, 477 U.S. at 323. The party opposing summary judgment may not rest upon the mere allegations or denials of the party's pleadings, but must set forth "specific facts showing that there is a genuine issue for trial." See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963) (amended 2010)) ; Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. Anderson, 477 U.S. at 247–48.

## Discussion

*Direct Infringement*

In order to prove direct copyright infringement, ACT must prevail on both prongs: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'n, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361 (1991); 17 U.S.C. §§ 106, 501 (2012). The word "copying" is shorthand for the infringing of any of the copyright owner's exclusive rights under 17 U.S.C. § 106 (2012).[2] See S.O.S. Inc. v. Payday, Inc., 886 F.2d 1081, 1085 n.3 (9th Cir. 1989). The Court only reaches the issue of direct infringement if ACT establishes that *The Works* is entitled to copyright protection.

WaterFurnace alleges that *The Works* is not entitled to copyright protection. (Doc. 115 at 2.) As the Court has already discussed and summarized, Mr. Hamlin presented this same argument in his motion for summary judgment, which the Court rejected. (Docs. 89,

---

[2] § 106. Exclusive rights in copyrighted works
. . . the owner of a copyright under this title has the exclusive rights to do and to authorize any of the following:
1. to reproduce the copyrighted work in copies or phonorecords;
2. to prepare derivative works based upon the copyrighted work;
3. to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; . . .
5. in the case of literary . . . works . . . to display the copyrighted work publically; . . .
17 U.S.C. § 106 (2012).

126.) The Court again finds as a matter of law that *The Works* is entitled to copyright protection. (See Doc. 126.)

Next, "[i]f ownership of a valid copyright is established, then to avoid summary judgment a plaintiff asserting a claim for copyright infringement need only demonstrate a triable issue of fact as to whether the defendant 'copied anything that was original to their work.'" Honeywell Intern., Inc. v. Western Support Group, Inc., 947 F. Supp.2d 1077, 1086 (D. Ariz. 2013) (quoting Funky Films, Inc. v. Time Warner Entertainment Co., L.P., 462 F.3d 1072, 1076 (9th Cir. 2006)). Thus, at issue is whether WaterFurnace copied elements of *The Works* that are original and thus directly infringed upon ACT's copyright.

Pursuant to 17 U.S.C. § 106(5), as a copyright owner, ACT had the exclusive right "to display the copyrighted work publicly." "Display" means "to show a copy of it, either directly or by means of a film, slide, television image, or any other device or process. . . ." Id. at § 101. Section 101 defines "copies" as "material objects . . . in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device."

Where there is direct evidence of copying, a plaintiff need not address defendant's access to the copyrighted work and substantial similarity. However, because direct evidence of copying is generally not available, plaintiffs seek to prove direct infringement by copying by showing that defendants had access to the copyrighted work and that the two works are substantially similar. See B2B CFO Partners, LLC v. Kaufman, 787 F. Supp.2d 1002, 1007 (D. Ariz. 2011). According to circuit precedent, a two-part extrinsic/intrinsic test is used to determine whether two works are substantially similar. See Smith, 84 F.3d at 1218. In motions for "summary judgment, only the extrinsic test is relevant. If plaintiff satisfies the extrinsic test, the intrinsic test's subjective inquiry must be left to the jury and summary judgment must be denied." Id.

WaterFurnace alleges that ACT cannot establish that *The Works*, when reviewed in its entirety, is substantially similar to Mr. Hamlin's *Smarter Sales Training*. (Doc. 115 at 2.)

1 Mr. Hamlin presented this same argument to the Court. (Doc. 89.) Given that Mr. Hamlin
2 had a high degree of access to *The Works*, the Court applied a lower standard of proof
3 regarding substantial similarity. See B2B CFO Partners, 787 F. Supp.2d at 1007-08. Under
4 the applicable two part test, the Court found that ACT established the "extrinsic test", and
5 that a determination of the "intrinsic test" was a question properly left for the jury. (Doc.
6 126.)

7 Finally, WaterFurnace argues that even if allegations remain regarding whether Mr.
8 Hamlin directly infringed on *The Works*, ACT still must prove that WaterFurnace's actions,
9 separate and apart from Mr. Hamlin, directly infringed on *The Works*. (Doc. 115 at 2.)
10 WaterFurnace acknowledges that it contracted with Mr. Hamlin to present HVAC sales
11 training materials at its seminars, but claims to have had no part in creating, deciding or
12 authorizing what sales-training materials Mr. Hamlin would use or did use. (Id. at 3.)
13 According to WaterFurnace, Mr. Hamlin testified as follows at his December 17, 2012
14 deposition:

> Q. Did you create the *Smarter Sales* Training program yourself?
> A. Yes, sir.
> Q. Did anybody from WaterFurnace assist you in creating the *Smarter Sales* Training program?
> A. No, sir.

18 (Doc. 116-7 at 6.)

19 In response, ACT argues that it remains a disputed material question of fact and law
20 whether Mr. Hamlin, regardless of his independent contractor status, was an agent of
21 WaterFurnace or a nonagent service provider for WaterFurnace when he copied the Works,
22 citing Ochoa v. J.B. Martin & Sons Farms, Inc., 287 F.3d 1182, 1189 (9th Cir. 2002). (Doc.
23 118 at 9.) ACT contends that it has direct evidence that Mr. Hamlin copied *The Works* to
24 create the *Smarter Sales* Training Materials because Mr. Hamlin left ACT's title ("Trane
25 Boot Camp") and other references to "Trane" in the slides and the notes on the presentation
26 slides. (Id. (citing Doc. 119-8 at 6).)

27 ACT further contends it is undisputed that Mr. Hamlin's wife, Jodi, was a Territory
28 Manager for WaterFurnace during times relevant to this litigation. (See, e.g., Doc. 119-8 at

- 7 -

7.)  ACT contends that WaterFurnace directly infringed upon its copyright in *The Works* because in Mr. Hamlin's subsequent July 10, 2013 deposition, he clarified that WaterFurnace employee Jodi Hamlin assisted him in preparation of the training materials. (Doc. 119-10 at 2, ("Q: Did anyone assist you in the preparation of those materials? A: My wife.").) ACT maintains that Jodi assisted and was integral in copying and distributing the *Smarter Sales* Training Materials to WaterFurnace personnel. (Doc. 118 at 9.)

Finally, and in addition, ACT contends that other WaterFurnace personnel participated and provided guidance and oversight to Mr. Hamlin in creating and promoting the *Smarter Sales* Training Materials. (Id. at 8-9.) Citing WaterFurnace emails that occurred during the creation and distribution of the *Smarter Sales* Training Materials, ACT contends that these WaterFurnace personnel had knowledge that the *Smarter Sales* materials included ACT content and that WaterFurnace provided Mr. Hamlin substantial assistance and encouragement in using *The Works* for WaterFurnace's benefit. (Id.).

In this case, to avoid summary judgment in favor of WaterFurnace, ACT need only demonstrate a triable issue of material fact as to whether WaterFurnace copied anything that was original to ACT's work. Viewing the evidence in the light most favorable to ACT, the non-movant, the Court finds that ACT has created a triable issue of material fact whether Mr. Hamlin was an agent for WaterFurnace at the time that he created the *Smarter Sales* Training Materials and allegedly copied *The Works*. See Wiggs v. City of Phoenix, 198 Ariz. 367, 369, 10 P.3d 625, 627 (2000) (holding that an independent contractor is an agent of the principal when the principal instructs the independent contractor agent on what to do but not how to do it). The Court has reviewed the email correspondence between WaterFurnace executives/employees and Mr. Hamlin. (Docs. 119-9, 119-10 and 119-11.) WaterFurnace treated Mr. Hamlin as its agent as WaterFurnace exercised control and oversight in what it wanted to see in the *Smarter Sales* Training Materials. (See id.)

Further, after reviewing WaterFurnace's emails, the Court finds that ACT has created an issue of material fact whether Mr. Hamlin directly copied *The Works* to create the *Smarter Sales* Training Materials. The email documents show that Mr. Hamlin, in his preparation of

1 the *Smarter Sales* Training Materials left ACT's title ("Trane Boot Camp") and other 2 references to "Trane" in the slides and the notes on presentation slides. (See Doc. 119-8.) 3 These issues of material fact in and of themselves preclude the Court from granting 4 WaterFurnace's motion for summary judgment.

5 Moreover, the Court finds that ACT has created an issue of material fact whether 6 WaterFurnace employee Jodi Hamlin assisted her husband and directly copied *The Works* 7 to help create the *Smarter Sales* Training Materials. Mr. Hamlin admitted that his wife 8 assisted him in his preparation of these materials in his July 10, 2013 deposition. (See Doc. 9 119-10.)

10 Finally, the Court finds that there is an issue of material fact whether WaterFurnace 11 personnel had knowledge that the *Smarter Sales* materials included ACT content and whether 12 WaterFurnace personnel provided Mr. Hamlin substantial assistance and encouragement in 13 using *The Works* for WaterFurnace's benefit. (Docs. 119-8, 119-9, 119-10 and 119-11.) 14 These issues of material fact also preclude the Court from granting WaterFurnace's motion 15 for summary judgment.

16 On these numerous bases, the Court finds that material facts in the non-movant ACT's 17 favor preclude granting WaterFurnace's motion for summary judgment. It is for the jury to 18 assess the facts of these issues at trial.

19 *Aid and Abet Breach of Loyalty*

20 WaterFurnace alleges that in order to prove this claim, ACT must prove the following 21 elements: (1) that Mr. Hamlin engaged in conduct for which he is liable to ACT (i.e., breach 22 of duty of loyalty); (2) that WaterFurnace was aware that Mr. Hamlin was going to engage 23 in such conduct; and (3) that WaterFurnace provided substantial assistance or encouragement 24 to Mr. Hamlin with the intent of promoting the infringing conduct. (Doc 115 at 10 (citing 25 Ramirez v. Chavez, 71 Ariz. 239; 226 P.2d 143 (1951); Restatement (Second) of Torts § 26 876(b) (1979)).)

27 ACT agrees with WaterFurnace that it must prove each of those elements in order to 28 prevail on its aiding and abetting claim. (Doc. 118 at 14-15.). ACT argues that prior to May

1  2011, while Mr. Hamlin was an independent contractor for ACT, he had a duty of loyalty to
2  ACT, that he breached his duty, and that WaterFurnace assisted and encouraged Mr. Hamlin
3  with the intent of promoting the infringing conduct. (Id.) ACT cites WaterFurnace's emails
4  in support of WaterFurnace's assistance and encouragement to Mr. Hamlin to copy *The*
5  *Works* and use the training materials to WaterFurnace's advantage. (Id.)

6  Viewing the evidence in the light most favorable to ACT, the non-movant, the Court
7  finds that ACT has created a triable issue of material fact whether Mr. Hamlin was an agent
8  for ACT at the time that he created the *Smarter Sales* Training.

9  Before May 2011, when Mr. Hamlin left ACT for WaterFurnace, at issue is whether
10 Mr. Hamlin breached a duty of loyalty to ACT by copying *The Works* and whether
11 WaterFurnace assisted and encouraged Mr. Hamlin's conduct. The Court has reviewed
12 WaterFurnace's emails during this time period and, viewing the evidence in the light most
13 favorable to ACT, finds that they create an issue of material fact whether WaterFurnace
14 personnel substantially assisted and encouraged Mr. Hamlin's copying of the *The Works*.
15 (See, e.g., Doc. 119-5 at 2, 119-8 at 2-4, 6, 17-18, 119-11 at 3-11.) The emails document the
16 Hamlins, Jim and Jodi, knowingly using ACT's training materials for WaterFurnace's
17 purposes, that WaterFurnace personnel were aware that ACT's training materials were being
18 utilized, and encouraged their use for WaterFurnace's benefit.

19 The WaterFurnace emails document the elements that ACT must prove in order to
20 prevail on this claim, that Mr. Hamlin was an agent of ACT when he was creating the
21 *Smarter Sales* program by copying *The Works*, which are material facts in support of a
22 breach of Mr. Hamlin's duty of loyalty to ACT; that WaterFurnace was aware that Mr.
23 Hamlin was engaging in such conduct; and that WaterFurnace provided substantial assistance
24 or encouragement to Mr. Hamlin with the intent of promoting the infringing conduct.

25 Again, viewing the evidence in the light most favorable to ACT, the Court finds that
26 material facts in the non-movant ACT's favor preclude granting WaterFurnace's motion for
27 summary judgment on ACT's aiding and abetting the breach of the duty of loyalty claim.
28 It is for the jury to assess the facts of these issues at trial.

## II. ACT'S MOTION FOR SUMMARY JUDGMENT

### Background

In 2002, the ACT contracted with Mr. Hamlin to become one of its national sales trainers. (Doc. 108-1 at 2.) Sometime before 2006, James Hamlin was photographed at an ACT Group meeting and Mr. Hamlin knew those photographs were taken for marketing purposes and for use in ACT's website and marketing materials. (Doc. 108-2 at 2-3.) Mr. Hamlin did not object to these photographs being taken for that purpose. (Id.) In May 2011, Mr. Hamlin ceased working for ACT and went to work for WaterFurnace as a national sales trainer. (Doc. 108-1 at 3.) ACT removed Mr. Hamlin's trainer profile from its website on the same day as his departure. (Doc. 108-4 at 3.)

In a June 9, 2011 letter to ACT, Mr. Hamlin requested that ACT remove his image from its website and its marketing materials. (Doc. 108-2 at 8.) In response, on July 28, 2011, ACT advised Mr. Hamlin that it had removed his images from its website, but requested that Mr. Hamlin notify ACT of any images still remaining, and that it would remove them immediately. (Doc. 108-3.)

In February 2013, Mr. Hamlin filed a counter-claim alleging that ACT violated his privacy for its commercial advantage by continuing to use his image in its marketing materials. (Doc. 64.) Subsequently, ACT moved for summary judgment on Mr. Hamlin's counterclaim. (Doc. 107.)

### Discussion

ACT acknowledges that it displayed Mr. Hamlin's image on its website and in its marketing materials prior to Hamlin leaving to join WaterFurnace in May 2011. (Doc. 107 at 2-3.) Mr. Hamlin consented to such use. (Id.) ACT contends that in June 2011 when it received Mr. Hamlin's letter asking that ACT not use his image, ACT made a good faith effort to remove Mr. Hamlin's image from its website and marketing materials. (Id. at 5.) ACT claims that if any image remained, it was just an unintentional oversight. (Id.) ACT argues that it is entitled to summary judgment because Mr. Hamlin's letter requesting removal of his image did not properly revoke consent and, regardless, Mr. Hamlin sustained

1  no commercial injury or economic damages. (Id. at 6-7.)

2  Mr. Hamlin alleges that ACT's appropriation of his likeness for its commercial
3  purposes was not unintentional or inadvertent. (Doc. 112 at 4.) According to Mr. Hamlin,
4  ACT received sufficient notice to remove his image from its website and marketing materials
5  yet Mr. Hamlin's image prominently remained. (Id.) Mr. Hamlin further argues that his
6  letter requesting image removal was adequate notice that he withdrew consent regarding his
7  image being used by ACT on its website and marketing materials. (Id. at 6-7.) Finally, Mr.
8  Hamlin disagrees that he has failed to properly allege damages since substantial damages
9  may be recovered upon proof of wrongful appropriation of his image, citing Reed v. Real
10 Detective Publishing Co., 63 Ariz. 294, 162 P.2d 133 (1945). (Id. at 5.)

11 Mr. Hamlin brought his counterclaim under the principle of supplemental jurisdiction,
12 citing 28 U.S.C. § 1367(a). Section 1367(a) grants supplemental jurisdiction over state law
13 counterclaims "that are so related to claims in the action within such original jurisdiction that
14 they form part of the same case or controversy under Article III of the United States
15 Constitution." Sparrow v. Mazda American Credit, 385 F. Supp.2d 1063, 1066 (E.D. Cal.
16 2005. Thus, the Court will apply Arizona substantive law to Mr. Hamlin's state law
17 counterclaim for invasion of privacy, which alleged the wrongful appropriation of his
18 likeness for ACT's commercial advantage. (Doc. 64.)

19 As a general matter, "a court is to apply the law in effect at the time it renders its
20 decision[.]" Landgraf v. USI Film Prod., 511 U.S. 244, 264 (1994) (further citation omitted).
21 Under Arizona law, in Estate of Reynolds v. Reynolds, 235 Ariz. 80, 82 n.2, 327 P.3d 213,
22 215 n.2 (App. 2014), the court discussed whether the right of publicity (shorthand for
23 wrongful appropriation of a party's likeness) existed under Arizona law. The court stated:

> Arizona long has recognized a common-law right of privacy, see Reed v. Real Detective Publ'g Co., 63 Ariz. 294, 305, 162 P.2d 133, 138 (1945), allowing claims based on each of the three other forms of invasion of privacy. See id. (publication of private facts); Hart v. Seven Resorts Inc., 190 Ariz. 272, 279, 947 P.2d 846, 853 (App.1997) (intrusion upon seclusion); Godbehere v. Phoenix Newspapers, Inc., 162 Ariz. 335, 342, 783 P.2d 781, 788 (1989) (false light).

28 Id. at 82, 327 P.3d at 215. The court then went on to recognize the right of publicity. Id. at

83, 327 P.3d at 216 (stating that we "hold that an individual has a right of publicity that protects his or her name and/or likeness from appropriation for commercial or trade purposes."); see also Carson v. Here's Johnny Portable Toilets, Inc., 698 F.2d 831, 838 (6th Cir. 1983) (stating that the right to publicity protects pecuniary not emotional interests). The Reynolds court further defined the right utilizing the Restatement (Third) of Unfair Competition ("Restatement Third") § 46 (1995). Id. Under the Restatement Third, "[o]ne who appropriates the commercial value of a person's identity by using without consent the person's name, likeness, or other indicia of identity for purposes of trade is subject to liability for resulting damages." Id. (further quotation omitted). Thus, under the Restatement (Third) definition, absent resulting economic damages, a plaintiff does not state a *prima facie* right to publicity claim. See Reynolds, 235 Ariz. at 85, 327 P.3d at 218. The Restatement (Third), also clarifies that use 'for purposes of trade' does not ordinarily include the use of a person's identity in news reporting, commentary, entertainment, works of fiction or nonfiction, or in advertising that is incidental to such uses. Restatement (Third) § 47.

In application of these principles to the relevant facts of Mr. Hamlin's counterclaim, the Court finds that ACT is entitled to summary judgment. Initially, it is undisputed that Mr. Hamlin is relying on injury to the person to sustain his privacy claim for damages, rather than resulting economic damages as defined by the Restatement (Third) §§ 46, 47. Absent a claim for resulting economic damages, Mr. Hamlin fails to state a *prima facie* right to publicity claim. See Reynolds, 235 Ariz. at 85, 327 P.3d at 218. Furthermore, under the Restatement (Third)'s clarification that use 'for purposes of trade' does not ordinarily include the use of a person's identity in news reporting, commentary, entertainment, works of fiction or nonfiction, or in advertising that is incidental to such uses, the fact that Mr. Hamlin's image was used in ACT's marketing materials is merely incidental use as defined by the Restatement (Third) § 47.

Under Estate of Reynolds and the Restatement (Third), the Court concludes that Mr. Hamlin's counterclaim fails to state a *prima facie* right of publicity claim and that ACT is entitled to summary judgment on the counterclaim.

**CONCLUSION**

Accordingly, on the basis of the foregoing,

**IT IS HEREBY ORDERED** granting ACT's motion for summary judgment on Mr. Hamlin's counterclaim.  (Doc. 107.)  Mr. Hamlin's counterclaim (Doc. 64) is denied with prejudice and dismissed.

**IT IS FURTHER ORDERED** denying WaterFurnace's motion for summary judgment.  (Doc. 115.)

**IT IS FURTHER ORDERED** denying as moot the parties' inquiry regarding the status of their motions for summary judgment.  (Docs. 128, 129.)

**IT IS FURTHER ORDERED** setting this matter for a status conference on **Wednesday, October 15, 2014 at 2:30 p.m.** in Courtroom 401, on the fourth floor of the Sandra Day O'Connor U.S. Federal Courthouse, 401 W. Washington St., Phoenix, Arizona 85003.

DATED this 17th day of September, 2014.

Stephen M. McNamee
Senior United States District Judge